United States District Court
Middle District of Florida
Jacksonville Division

**JANE G. CHARLES,**

   *Plaintiff,*

**v.**              **NO. 3:20-cv-341-J-34PDB**

**UNDERHILL STAFFING HEALTH SERVICE,**

   *Defendant.*

---

# Report and Recommendation

Jane Charles, proceeding without a lawyer and in forma pauperis ("IFP"), sues Underhill Staffing Health Service—her former employer—for alleged gender, ethnicity, nationality, and disability discrimination and retaliation.[1] Before the Court is Underhill's motion to dismiss or for a more definite statement, Doc. 13, and her response, Doc. 18. The motion was referred to the undersigned for a report and recommendation on an appropriate resolution. Doc. 22.

## I. Procedural History

In April 2020, Ms. Charles filed a five-count complaint and a motion to proceed IFP. Docs. 1, 2.

---

[1]Underhill explains Ms. Charles's former employer is "Underhill Staffing, Inc.," not "Underhill Staffing Health Service"—the entity Ms. Charles names as the defendant. Doc. 20 at 1 n.1. If this action proceeds, Ms. Charles must address whether she has named the correct entity as the defendant.

In an April 21, 2020, order, Magistrate Judge James Klindt determined the action likely is subject to dismissal for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[2] Doc. 4.

Judge Klindt detailed six pleading deficiencies: (1) the complaint is an impermissible shotgun pleading because each count incorporates each preceding count; (2) the complaint includes no allegation Ms. Charles suffered an adverse employment action based on gender, instead alleging termination for claiming worker's compensation, and no allegation she was treated less favorably than a similarly-situated individual outside her protected class; (3) the complaint alleges a sexual assault as the basis of a hostile-work-environment claim but confusingly also alleges without factual support a pattern of discrimination that included "constant verbal abuse" and "very degrading remarks"; (4) the complaint fails to state a claim of retaliation under Title VII of the Civil Rights Act of 1964, as amended, because seeking worker's compensation is not a protected activity under that law; (5) the complaint fails to allege facts making plausible a claim under 42 U.S.C. § 1981; and (6) the four-year statute of limitations might bar the § 1981 claim. Doc. 4 at 9–11.

Judge Klindt provided Ms. Charles information about free legal services and an opportunity to amend. Doc. 4 at 11–14. He explained the pleading standard, specified that the amended complaint must include sufficient factual allegations to state a plausible claim, and stated that the amended complaint would be reviewed under the IFP statute. Doc. 4 at 12–13.

---

[2]Judge Klindt later recused himself, explaining: "Over the weekend, in a social setting, the undersigned inadvertently learned of certain matters involving this case." Doc. 5 at 1.

In May 2020, Ms. Charles filed an amended complaint, Doc. 7, and a motion for leave to attach exhibits to the amended complaint, Doc. 8. The exhibits are: (1) right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC"), (2) medical records from places referenced in the amended complaint, (3) a disability decision by the Social Security Administration, (4) an "Employee Counseling Report," and (5) a printout detailing State of Florida unemployment benefits she potentially could receive effective November 16, 2009, due to "Lack of Work." Docs. 8, 8-1. The undersigned granted the motion, making the exhibits part of the amended complaint. Doc. 9.

Finding Ms. Charles satisfies the poverty requirement to proceed IFP and observing that each count no longer incorporates each preceding count, that she adds factual allegations, and that she no longer tries to bring claims under § 1981, the undersigned granted her motion to proceed IFP and directed the United States Marshal to effectuate service of process. Doc. 9.

Underhill responded with the current motion. Doc. 13. With filings apparently crossing paths in the mail, Ms. Charles moved for default and default judgment. Doc. 15. The undersigned denied that motion because Underhill had responded timely. Doc. 17. She then responded in opposition to the motion to dismiss, Doc. 18, and moved to appoint counsel, Doc. 19. The undersigned denied the motion to appoint counsel without prejudice because she presented no extraordinary circumstance justifying asking a lawyer to represent her for free. Doc. 23.

Underhill moved for guidance on how to conduct the case management conference and an extension of the time to conduct one because Ms. Charles is represented by counsel in a pending state action against Underhill concerning

worker's compensation, her motion to appoint counsel suggests she might lack the mental capacity to participate in a case management conference, and she or her husband are refusing to identify authorship of emails to Underhill's counsel. Doc. 20. She responded and filed a unilateral case management report. Docs. 21, 21-1. The undersigned granted the motion to the extent the undersigned waived the case-management-conference requirement, explained the undersigned will conduct a pretrial conference to determine deadlines with the parties' input if the action proceeds past dismissal, and directed both sides to identify authorship of correspondence going forward. Doc. 24.

## II.    Amended Complaint

The amended complaint includes more than ninety-nine paragraphs and this "**INTRODUCTION**":

> Ms. Charles, a Black female of St. Lucian descent, brings this action Pro Se seeking damages against Underhill for violations of Title VII of The Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., providing for relief against discrimination based on gender, ethnicity, and nationality, for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. 12101 et seq. providing relief and disability discrimination and retaliation, and the creation of a hostile work environment; for violations of §704(a) of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3(a), which prohibit retaliation against an employee for pursuing her civil rights.

Doc. 7 ¶ 1 (errors in original).

In the amended complaint and through exhibits to the amended complaint, Ms. Charles alleges these facts.

She is a Black woman of St. Lucian decent. Doc. 7 ¶ 1. She lives in Duval County, Florida. Doc. 7 ¶ 5.

In 2010, Underhill hired her to work as a certified home health aide. Doc. 7 ¶¶ 5, 6, 9. In May 2013, she began working for both Underhill and its "leasing agent," South East Personnel Leasing, Inc. Doc. 7 ¶ 10. As a certified home health aide, she provided health care services to patients of Underhill and South East. Doc. 7 ¶ 11.

In April 2014, Underhill and South East assigned her to work at a residence at 8940 Yeoman Court in Jacksonville, Florida, to provide care to the sister of "Mr. Hayes." Doc. 7 ¶ 12. No one at either entity said anything about harassment at the residence, and neither entity undertook extra security measures. Doc. 7 ¶¶ 14, 15.

On April 18, 2014, while she was working at the residence, Mr. Hayes "sexual [sic] assaulted and battered" her. Doc. 7 ¶ 16. She immediately contacted Underhill to request care and worker's compensation to see a doctor. Doc. 7 ¶ 18. Underhill denied the request. Doc. 7 ¶ 19.

Underhill sent her to an abandoned home with no patient, and, on October 28, 2014, Underhill issued her a written warning for "[n]ot completing assigned hours" and "[i]nsubordination," explaining, "Aide was assigned to new client that was moving. She refused to work in an empty home." Doc. 7 ¶ 20; Doc. 8-1 at 58–59. Underhill "wrote up Ms. Charles as per the agreement with South East to report all injury to [her] supervisor." Doc. 7 ¶ 21.

Underhill and South East "discharged" her. Doc. 7 ¶ 22. (She does not allege when.)

In late 2016, she slipped and fell, injuring her neck and back, fracturing her ankle, splitting a disc in her tailbone, and causing her to fall into major

depression, major anxiety, and PTSD. Doc. 7 ¶ 24; Doc. 8-1 at 5, 8–57 (medical records).

In 2017, she sought care at the Jacksonville Women Center and Mental Health Care Center for citizens of Sulzbacher. Doc. 7 ¶ 23; Doc. 8-1 at 5, 8–57 (medical records). She was prescribed medication for "mental health and pain."[3] Doc. 7 ¶ 26; Doc. 8-1 at 5, 8–57 (medical records). The Social Security Administration found her disabled and entitled to benefits beginning in April 2017. Doc. 8-1 at 6–7 (Social Security Administration decision).

She complained of "workplace discrimination" to the Jacksonville Human Rights Commission ("JHRC") and to the EEOC. Doc. 7 ¶ 28. The EEOC issued right-to-sue letters in January 2020, adopting findings of the JHRC. Doc. 7 ¶ 8; Doc. 8-1 at 1–4 (EEOC "Dismissal and Notice of Rights").

Based on those factual allegations, she attempts to bring eight claims for relief. In count I, titled, "Gender Discrimination in violation of Title VII," she alleges:

> 35. Ms. Charles is a member of a protected class because she is a woman.
>
> 36. Ms. Charles was qualified for her job as a Certified Home Health Aide because she was able to perform all of the essential functions of a Certified Home Health Aide
>
> 37. Ms. Charles suffered adverse employment action because Underhill terminated Ms. Charles.
>
> 38. Underhill displaced Ms. Charles with someone outside of the protected class because Underhill replaced the Certified Home Health Aide position that Mr. Charles occupied with a man.

---

[3] She explained to an imaging and diagnostic center she had been in a car accident on July 17, 2017. Doc. 8-1 at 22.

39. In addition, Underhill prevented Ms. Charles from access to workers compensation in order to conceal the disability that Ms. Charles had developed as a direct result of her employment with Underhill.

40. This constitute an unlawful discrimination against Ms. Charles based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.

41. As a result of the gender discrimination, Ms. Charles suffered damages, including, but not limited to, lost wages and consequential damages.

Doc. 7 ¶¶ 35–41 (typographical errors in original).

In count II, titled, "Hostile Work Environment," she alleges:

42. Underhill created a hostile work environment and engaged in a pattern of discrimination.

43. Underhill discriminated against Ms. Charles based Ms. Charles race and gender as a black woman by denying Ms. Charles workers compensation and then terminating Ms. Charles and then replacing Ms. Charles with a white male.

44. Ms. Charles belongs to a protected class as a Black female of St. Lucian descent.

45. Underhill harassed Ms. Charles through verbal abuse and degrading insults that include making fun of Ms. Charles' pronunciation and how Ms. Charles pronounced her words.

46. Underhill routinely made of Ms. Charles and stated that they could not understand Ms. Charles because of her accent even though Ms. Charles spoke clearly by an objective or subjective standard.

47. Underhill's harassment was based on Ms. Charles race and gender as a Black female of St. Lucian descent.

48. The conduct of the Defendant and its employees had an objective and subjective psychological effect on the Plaintiff and on the Plaintiffs ability to work and to carry out the functions of her job.

49. Underhill's conduct was perverse, severe and on-going.

7

50. As a result of Underhill's conduct, Ms. Charles was required to seek medical treatment for trauma, depression and for other physical and mental injuries for which she is still being treated.

51. Underhill took no action to cause the cessation of the hostile work environment, and contributed to the on-going hostile environment.

52. Underhill had a responsibility to make sure that Ms. Charles work environment was safe and to protect Ms. Charles from harm in the work place. Underhill failed in its responsibilities when Underhill ignored Ms. Charles complaints about the unsafe work environment.

53. In addition, Underhill prevented Ms. Charles from access to workers compensation in order to conceal the disability that Ms. Charles had developed as a direct result of her employment with Underhill.

54. This constitutes a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.

55. As a result of the Underhill's hostile work environment, Ms. Charles has suffered damages, including, but not limited to, the denial of statutorily protected rights, including workers compensation.

Doc. 7 ¶¶ 42–55 (typographical errors in original).

In count III, titled, "Gender Retaliation in Violation of Title VII," she alleges:

56. Ms. Charles engaged in statutorily protected activity by requesting workers compensation.

57. Underhill retaliated against Ms. Charles because Ms. Charles reported the discriminatory conduct of her supervisors to Perils Johnson.

58. Underhill unlawfully retaliated against Plaintiff because she opposed conduct which was made an unlawful practice by Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. § 2000e, et seq., in violation of § 704 of Title VII, including insisting that she be treated fairly without regard to her gender and her national origin and with respect to her termination and job duties.

59. Ms. Charles suffered a materially adverse action because Ms. Charles was denied her statutorily protected right of workers compensation and then Underhill subsequently terminated Ms. Charles.

60. There is a causal connection between the protected activity and the adverse action because Ms. Charles was denied her workers compensation that subsequently led to her termination.

61. Male employees received better treatment from Underhill than Ms. Charles received.

62. In addition, Underhill prevented Ms. Charles from access to workers compensation in order to conceal the disability that Ms. Charles had developed as a direct result of her employment with Underhill.

63. This constitutes retaliation in violation of 42 U.S.C. §[]2000e-3(a).

64. As a result of the retaliation, Ms. Charles suffered damages including, but not limited to, the denial of statutorily protected rights, including workers compensation.

Doc. 7 ¶¶ 56–64.

In count IV, titled, "Race Discrimination in Violation of Title VII," she alleges:

65. Ms. Charles is a member of a racial minority as a Black female of St. Lucian descent.

66. Underhill intended to discriminate against Ms. Charles on the basis of race because Ms. Charles' accent made Ms. Charles a target of Underhill, therefore, Underhill placed Ms. Charles in a harmful environment, Underhill denied Ms. Charles workers compensation when she requested coverage for a resulting harm, and then Underhill terminated Ms. Charles.

67. The discrimination concerned one or more of the activities enumerated in the statute because Ms. Charles requested workers compensation, a legally protected right.

68. The racial discrimination practiced by Underhill deprived the Plaintiff of the equal benefit of the law and interfered with the Plaintiffs employment in violation of 42 U.S.C. § 2000e, et seq., as amended.

69. But for Ms. Charles' race, Underhill would not have terminated or treated Ms. Charles differently.

70. White employees received better treatment from Underhill that Ms. Charles received.

71. In addition, Underhill prevented Ms. Charles from access to workers compensation in order to conceal the disability that Ms. Charles had developed as a direct result of her employment with Underhill.

72. This constitutes discrimination, based on race, and disparate treatment in violation of 42 U.S.C. § 2000e, et seq. as amended, which prohibits discrimination on the basis of race.

73. As a result of the Underhill's racial discrimination, Ms. Charles suffered damages, including, but not limited to, lost wages and consequential damages.

Doc. 7 ¶¶ 65–73 (typographical errors in original).

In count V, titled, "Race Retaliation in Violation of Title VII," she alleges:

74. The racial discrimination practiced by Underhill deprived the Plaintiff of the equal benefit of the law and interfered with the Plaintiffs employment in violation of 42 U.S.C. §2000e, et seq., as amended.

75. Ms. Charles engaged in the protected activity of requesting workers compensation that resulted from a foreseeable harm.

76. Underhill took materially adverse action by denying Ms. Charles workers compensation, falsely writing up Ms. Charles, and terminating Ms. Charles.

77. There is a casual link between the protected activity and the adverse action because Underhill made fun of Ms. Charles. But for Ms. Charles race, Underhill would not have terminated or treated Ms. Charles differently.

78. White employees were provided workers compensation when white employees requested workers compensation.

79. In addition, Underhill prevented Ms. Charles from access to workers compensation in order to conceal the disability that Ms. Charles had developed as a direct result of her employment with Underhill.

80. This constitutes retaliation in violation of 42 U.S.C. §2000e, et seq., as amended, which prohibits retaliation on the basis of race.

81. As a result of Underhill's racial retaliation, Ms. Charles suffered damages including the loss of workers compensation, wages, and consequential damages.

Doc. 7 ¶¶ 74–81 (typographical errors in original).

In count VI, titled, "Failure to Provide a Reasonable Accommodation," she alleges:

82. At all times relevant to this action, Ms. Charles was and is a qualified individual with a mental disabilities of post-traumatic stress, panic attacks, depression, and anxiety and physical disabilities of pinched nerves in her back and neck and a split tailbone, disabilities within the meaning of the ADA in that Ms. Charles is capable of performing all essential functions of her employment position with or without a reasonable accommodation.

83. Ms. Charles has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Underhill.

84. Underhill is prohibited under the ADA from discriminating against Ms. Charles because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

85. Underhill violated the ADA by failing to accommodate Ms. Charles and by otherwise discriminating against her. This is evidenced by Ms. Charles requesting worker's compensation to receive treatment to continue her employment and Underhill responding by terminating Ms. Charles.

86. Ms. Charles has been damaged by the illegal conduct of Underhill, including, but not limited to, lost wages.

Doc. 7 ¶¶ 82–86 (typographical errors in original).

In count VII, titled, "Disability Retaliation," she alleges:

87. Ms. Charles was in the protected ADA group at all times material to this action with mental disabilities of post-traumatic stress, panic attacks, depression, and anxiety and physical disabilities of pinched nerves in her back and neck and a split tailbone.

88. Underhill failed to provide a reasonable accommodation despite repeated requests from Ms. Charles through a worker's compensation claim.

89. Ms. Charles decried Defendant's failure to provide a reasonable accommodation.

90. Ms. Charles opposed Defendant's unlawful employment practices predicated on disability discrimination and thereby engaged in protected activity under the ADA.

91. Underhill's hostile and disparate treatment of Ms. Charles were causally related to her protected opposition to disability discrimination.

92. Underhill's purported reasons for subjecting Ms. Charles to hostile and/or disparate treatment were a mere pretext for retaliation motivated by Ms. Charles' opposition against Underhill's disability discrimination.

93. Ms. Charles has been damaged by Underhill's illegal conduct, including, but not limited to, lost wages.

Doc. 7 ¶¶ 87–93 (typographical errors in original).

In count VIII, titled, "Americans with Disabilities Act Discrimination," she alleges:

94. Ms. Charles had a disability, developed a history of disability, and was perceived Underhill as having a disability as defined by the ADA. Ms. Charles' disabilities are mental disabilities of post-traumatic stress, panic attacks, depression, and anxiety and physical disabilities of pinched nerves in her back and neck and a split tailbone. This was supported by Ms. Charles expert reports.

95. During Ms. Charles' employment with the Underhill, the Underhill was aware that Ms. Charles was disabled and Underhill treated Ms. Charles as disabled.

96. On or about April 18, 2014, Ms. Charles became disabled as a result of an on the job injury. Underhill was aware of the injury.

97. On or about April 18, 2014, Ms. Charles notified Underhill of the need for

98. Ms. Charles was qualified for the position and able to perform its essential functions; however, the Underhill discriminated against Ms. Charles by prohibiting access of workers compensation and termination, in favor of lesser-qualified individuals.

99. Underhill took adverse employment action against Ms. Charles that included loss of protected employment benefits, workers compensation, and termination that resulted in loss of workers compensation, wages, and consequential damages.

Doc. 7 ¶¶ 94–99 (typographical errors in original).

She demands compensatory damages of $300,000 for each claim, punitive damages as found by a jury for each claim, injunctive relief prohibiting Underhill from discriminating against her or anyone similarly situated to her, a declaration that Underhill's acts violated her rights under Title VII, attorney's fees, costs, and "such additional relief as the Court deems just and proper." Doc. 7 ¶ 2, pp. 7–8.

## III.  Motion and Response

### A.  *Motion*

Underhill argues dismissal is warranted for four reasons.

First, Underhill argues the Court lacks subject matter jurisdiction over claims relating to state worker's compensation law. Doc. 13 at 9–11. Underhill

13

observes that worker's compensation law generally does not permit a lawsuit against an employer to recover injuries sustained by the employee. Doc. 13 at 10–11.

Second, Underhill argues Ms. Charles failed to exhaust administrative remedies for her claims for gender discrimination in count I, retaliation in counts III and VII, and disability discrimination in counts VI and VIII. Doc. 13 at 9–13. Underhill contends dismissal without prejudice to allow Ms. Charles to file another charge would be futile because more than 875 days have passed since her employment ended with Underhill ("in 2014"). Doc. 13 at 13–14.

Third, Underhill argues the amended complaint is a "shotgun pleading," because it includes alleged facts but fails to identify which facts support which claim and, moreover, each claim incorporates allegations about the alleged sexual assault and battery and request for worker's compensation benefits. Doc. 13 at 17–18.

Fourth, Underhill argues the amended complaint lacks sufficient factual allegations to state plausible claims for discrimination in counts III, IV, V, VI, and VIII and for retaliation in counts III and VII. Doc. 13 at 14–22.

Underhill argues that if the Court does not dismiss the action, the Court should at least require Ms. Charles to replead to comply with the pleading standard. Doc. 13 at 22–23. Underhill contends the amended complaint "is so impermissibly vague and conclusory that it will be impossible for [Underhill] to provide a response." Doc. 13 at 23. Underhill contends Ms. Charles fails to identify acts of harassment or discrimination beyond the alleged sexual assault and battery and resulting alleged medical conditions she suffered, fails to identify an employee outside of her protected category who engaged in similar

conduct but was treated differently, fails to specify the unlawful employment action about which she complains, and fails to allege who knew or should have known about harassment at the Hayes residence. Doc. 13 at 23.

To the motion to dismiss, Underhill attaches five exhibits and observes the Court may judicially notice a public record to decide a motion to dismiss. Doc. 13 at 5 n.3; Docs. 13-1–13-5.

The first exhibit is a charge of discrimination Ms. Charles filed on November 5, 2014. Doc. 13-1. In the charge, Ms. Charles marked boxes for national-origin discrimination and retaliation and stated:

> 1. I am being subjected to a hostile work environment and have been since about May 19, 2014 (sexual acts and racial comments). I was also disciplined (written-up) on April 14, 2014 and October 28, 2014 in my position as a Home Health Aide with Underhill Staffing Health Services. I began employment with the agency on or about November 2010.
>
> 2. I was not given a reason for being subjected to a hostile work environment. I was informed by Ms. Anne Sanders, American, Supervisor, that I was being disciplined on May 19, 2014, because I attempted to borrow $600.00 dollars from a client's mother, which I denied. I received an Employee Counseling Report from Ms. Sanders on October 28, 2014, which stated I did not complete my assigned hours and I was also accused of insubordination.
>
> 3. I believe I was subjected to a hostile work environment and disciplined because of my national origin, St. Lucian and in retaliation for reporting the harassment in violation of Title XI, Chapter 402 of the Jacksonville Municipal Code, Chapter 760 of the Florida Statutes and in violation of Title VII of the 1964 Civil Rights Act, as amended, because:
>
>> a) On April 18, 2014, I was assigned to provide Home Health Care for a female client, while performing those duties the client's brother placed his hand on my thigh in which I voiced my objection while I was sitting with the client.

b) Whenever, I have reported to this assignment, the client's mother would state that she has told Underhill Health Services not to send "these people" (people who she alleges are unable to speak English and she can't understand what they are saying) to her house. I reported these actions to my Underhill Health Services Supervisor, Ms. Sanders and requested that she assign me to a new client. I was repeatedly sent back to this same location until I could no longer tolerate the hostility.

c) After filing a police report on July 15, 2014 against the client's brother as well as a civil law suit I have received two disciplinary write-ups and have been falsely accused of declining job assignments, attempting to borrow money from a client's mother and for being insubordinate. I refused to sign the write-ups because the allegations were false. On October 28, 2014, I was sent to an abandoned house and Ms. Sanders wanted me to go in and clean the house so the client could receive her deposit back from her (the client's) landlord. I informed Ms. Sanders that I was a Home Health Aide and not a Mary Maid [sic].

Doc. 13-1 at 1–2.

The second exhibit is a charge of discrimination Ms. Charles filed on July 22, 2015. Doc. 13-2. In the charge, Ms. Charles marked a box for retaliation and stated:

1. I am being subjected to unequal terms and conditions of employment (denied the opportunity for client (patients) assignment) as recent as July 22, 2015 in my position as a Home Health Aide. I began employment with Underhill Staffing Health Services on or about November 2010.

2. I was informed by Mandy (last name unknown), Human Resources Director and Savannah (last name unknown), I needed to check with my lawyer before I be assigned clients.

3. I feel I am being subjected to unequal terms and conditions of employment in retaliation for filing an EEOC complaint (Charge number: 15E- 2014-00020) against the company. I believe this act to be in violation of Title XI, Chapter 402 of the Jacksonville Municipal Code; Chapter 760 of the Florida Statutes, and Title VII of the 1964 Civil Rights Act, as amended, because:

> a. After filing an EEOC complaint against the company on November 5, 2014, I have not been assigned clients. In April 2015, I spoke with both Mandy and Savannah about being assigned clients and their response to me was, "you need to speak with your lawyer about getting assigned clients." This, after the company continues to post advertisement[s] for Home Health Aide positions, which I have pictures of them doing.

Doc. 13-2 at 1–2.

The third exhibit is a completed Jacksonville Sheriff's Office ("JSO") "Employee Complaint Form" (a form to complain about a JSO employee) signed by Ms. Charles on July 8, 2014, in which she complains that an officer refused to "take" her complaint that Mr. Hayes felt her thigh with his hand with a gun at his side because she had no witness. Doc. 13-3 at 1–2. The third exhibit also includes a JSO "Supplemental Report" stating, "On 7-22-14 the victim came into the [Police Memorial Building] to update her report. The victim said she wanted it clarified in her report that she was working on 7-19-14 9am–9pm. The incident, according to the victim, occurred at 3pm. She also said the subject had a firearm on his hip, and appeared to be trying to intimidate her as well as another home health aid (Joyce)." Doc. 13-3 at 3.

The fourth exhibit is a state court complaint by Ms. Charles and Darryl Allmond against "Lisa Haynes et al." (elsewhere in the record the name is "Hayes" not "Haynes") filed on May 23, 2014, in which Ms. Charles and Mr. Allmond (1) accuse Ms. Hayes of slander and race discrimination, both for allegedly telling Underhill that Ms. Charles demanded $600 to pay her (Ms. Charles's) rent, and (2) demand $200,000. Doc. 13-4.

The fifth exhibit is a compilation of orders pertaining to Ms. Charles's worker's compensation claim. Doc. 13-5. In a "Final Compensation Order" of the Florida Division of Administrative Hearings, Office of the Judges of

Compensation Claims, Jacksonville District Office, an administrative law judge describes Ms. Charles's worker's compensation claims:

> At the time of the events in question, the claimant was working as a home health aide when the brother of the person she was assisting grabbed her left thigh and caused a red mark on her thigh. The claimant did not realize there was any mark or bruising until later that evening in the shower. According to the claimant's deposition testimony, she did not seek medical care that day, nor at any time thereafter. Having reviewed the records proffered by the claimant as exhibits, none of those records establish a physical injury resulting from the incident in which she was grabbed on her left thigh.
>
> …
>
> Even had the claimant established the existence of a physical injury requiring medical treatment, her claim would fail. [Florida law] requires that any "mental or nervous injuries occurring as a manifestation of an injury compensable under this chapter shall be demonstrated by clear and convincing medical evidence by a licensed psychiatrist meeting criteria established in the most recent edition of the diagnostic and statistical manual of mental disorders[.]" …The claimant has offered only a report from Dr. Alan Harris, a report that has not been authenticated. That report establishes he is a psychologist not a psychiatrist. Accordingly, claimant has again failed to provide competent evidence of an essential element necessary to prove her claim: the opinion of a qualified psychiatrist that she has sustained a mental or nervous injury.
>
> Even were I to consider the report of Dr. Harris, which is not otherwise admissible, the claimant has failed to offer competent evidence of any mental or nervous injury occurring as a manifestation of a physical injury. Perhaps most telling from Dr. Harris' report is his concluding statement as follows: "Psychological testing was of questionable validity due to overstating the severity and number of symptoms. This does not mean that she does not have any problems. Rather, the nature and severity of her problems cannot be sifted out from the overstated symptoms."

Doc. 13-5 at 5–6. The judge denied her worker's compensation claims for failure to establish the existence of any injury—physical or mental—arising out of the April 18, 2014, incident. Doc. 13-5 at 6–7. In another order, the judge applied

the doctrine of res judicata and denied additional claims arising out of the same incident. Doc. 13-5 at 9–10. The state appellate court affirmed the latter order per curiam. Doc. 13-5 at 15–18.

## B.   *Response to the Motion to Dismiss*

Ms. Charles responds that, following Judge Klindt's order, she amended the complaint to eliminate from each count incorporation of the allegations of each preceding count, to add facts, and to omit potentially time-barred claims under § 1981. Doc. 18 at 1–2. She contends that the undersigned's order granting her motion to proceed IFP determined—in effect—that she alleges sufficient facts to proceed, mandating denial of the motion to dismiss. Doc. 18 at 2.

Ms. Charles alleges facts and legal conclusions akin to those alleged in the amended complaint but with additional details. *Compare* Doc. 7 *with* Doc. 18 at 2–8. She states she no longer worked for the Hayes family after April 18, 2014, having been reassigned "about 5 days after the sexual assault and batter." Doc. 18 at 8. Addressing the written reprimand referenced in the amended complaint, she states she "called her employer that her mind blankout and she did not know where she was located, and loss concentration as was standing in front of her new patience home[;] [she] is not a professional housekeeper but is a certify home health aid." Doc. 18 at 8 (typographical errors in original). She identifies Mandy Hunter, Ann Sanders, and Savannia Sanders as white Americans allegedly treated differently. Doc. 18 at 3. She states she "believe[s] that she has been a target of retaliation prior to the civil lawsuit as her co-workers made fun about her accent and as to all others." Doc. 18 at 7.

In response to the failure-to-exhaust argument, Ms. Charles alleges wrongdoing by individuals with the JHRC (specifically, by Ronnie Brown and Pat Rollins) in failing to file the charge with the Florida Commission on Human Rights ("FCHR"), failing to include all of her claims, and refusing to permit her to amend her charge or charges. Doc. 18 at 5, 7, 8. She also contends they lost photographic evidence she had given them to support her claims. Doc. 18 at 6. According to her, "Defendant and there friends name above and other co-employer bind, gag, lynching, Plaintiff with their knee on my neck to conceal the Plaintiff from standing up for her civil and constitutional rights." Doc. 18 at 5 (typographical errors in original). She adds, "This Court should not Plaintiff liable and as to gender or disability claim after Ronnie directed Plaintiff to seek mental health and abuse treatment at the Women Center of Jacksonville the service is free and noting that defendant fail to accommodate Plaintiff's disability." Doc. 18 at 7 (typographical errors in original). She contends several lawyers (including, specifically, Leslie Holland and Bryce Krampert), expressed concerns over the time the JHRC had taken to process her charges considering that the statute of limitations for a § 1981 claim expired in the meantime. Doc. 18 at 5.

Within the response to the motion to dismiss, Ms. Charles "move [sic] to strike" the motion to dismiss, contending Underhill misrepresents facts. Doc. 18 at 5. She contends she "complained about the sexual assault, harassment 'sex act'" but "they" did not report it possibly because they could not understand her Lucian accent. Doc. 18 at 6. She contends the police report submitted with the motion to dismiss "had to be corrected because the officer could not clearly understand [her] accent and writing information that [she] did not say, also [her] mental disabilities caused in this matter must be considered." Doc. 18 at 6. She states she does not recall asking a client for money in the approximately

eighteen years she worked as a certified home health aide and "surely never went back to the Hays [sic] home after [she] was reassigned." Doc. 18 at 7. She states, "Plaintiff has help trained new health aid who did not know how to use hoyalift and [k]new her job inside and out. Contrary to what counsel say part of that Lisa Hayes lawsuit was Plaintiff personal sweater was stolen at Hayes home. The lawsuit[.]" Doc. 18 at 7 (typographical errors in original).

Ms. Charles cites Fla. Stat. § 440.205 ("No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.") as "an example of employers unlawful practices against" her. Doc. 18 at 6. She then states:

> Health Clark, employer employee states that Plaintiff did not make a complaint and they didn't know that treatment was needed. However, William Rogner[] admitted to the worker comp. court that Plaintiff complaint was timely. Plaintiff accept the part in the affidavit as to Underhill other employees committed the wrongful act.

Doc. 18 at 6 (typographical errors in original).

Ms. Charles contends Mr. Krampert prepared the amended complaint, and "if defendant's are contending that the amended complaint was not done correctly, then that can amount to legal malpractice and noting if the decide to grant defendant motion and dismiss without prejudice Plaintiff then can add other defendants and claims or this Court can order mediation." Doc. 18 at 8 (typographical errors in original).

Under the heading "memorandum of law," Ms. Charles states the standard for a motion to dismiss and then states:

> The above-quoted material was published, written, stated by spoken words by defendants with actual malice, that is, with knowledge that it

was false or with reckless disregard of whether it was false or not. It was willfully designed by the defendants to discredit Plaintiff. separate him from his wife and family, cause serious mental, emotional, physical pain and his profession, and as much was malicious and per se slanderous and libelous. Statement such as those contained in the above-quoted material are, from their usual construction and common usage, construed as insults and tend to violence and breach of the peace. and file such statement with this Court contain in their pro-se answers and committed mail fraud by mailing false documents to the U.S. District Court by U.S. mail to conceal a claim. Defendants fail to even take reasonable steps of accuracy of the information. M.D. Fla. 1987 when Plaintiff in defamation action is deemed to be limited public figure, he or she has burden of showing by clear and convincing evidence that defamatory statement was statement of fact which was false and made with "actual malice" that is knowledge that it was false or with reckless disregard of whether it was false or not. …

Statutes of Fraud 68-10(3) F.P.D.

M.D. Ga. 1993. Evidence that defendant voluntarily gave false information or participated in plan such that it was foreseeable that false information would be used in statements made in government agency in order to further the plan is sufficient to sustain conviction for aiding and abetting of false statements, and thus intent requirement of false statement prosecution is satisfied if defendant knows that success of scheme is dependent on misrepresentations to and concealment from government agency.

18 U.S.C.A. §§ 2, 1001-U.S. Cannon, 811 F. Supp.

Doc. 18 at 12 (typographical errors in original).

Ms. Charles then states she asserts the intra-corporate conspiracy doctrine,[4] cites cases about the doctrine, and contends:

Defendants Invidious Discriminatory Animus, directed at the Plaintiff by defendant, EEOC, JHRC, Ronnie Brown Pat Rollins denial of Procedural Due Process and states Plaintiff failed to exhaust all administrative remedies and conceal plaintiff rights and directed

---

[4]The intra-corporate conspiracy doctrine provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

> invidious discriminatory animus as stated use of racial epithets or other
> expressions indicate a bias against members of a protected class is
> evidence that the defendants' conduct was motivated by a class-based
> invidious discriminatory animus under the fourth element of the test.
> Hawk v. Perillo, 642 F. Supp. 380 (N.D. Ill. 1985), and see Christain v.
> Crawford, 907 F.2d 808, 810 (8th Cir. 1990).

Doc. 18 at 13 (typographical errors in original).

To the response, Ms. Charles attaches twelve documents.

The first document is the undersigned's order permitting her to proceed IFP. Doc. 18-1 at 1–3.

The second document is a non-compete agreement between her and Underhill signed in October 2010. Doc. 18-1 at 4.

The third document is another completed JSO "Employee Complaint Form," this one signed by Ms. Charles on September 19, 2016, in which she states:

> Fail to write my complaint as I alleged the crime, Reginal Hayes put his
> hand between my legs reaching for my private area, while armed with a
> gun. I was providing health care services for his sister. However the
> officer wrote the statement that the criminal hand was on the outside of
> my thigh which was wrong it was on the inside of my thigh and no arrest
> were made. He also stated at the time not to write him up, I was in shock
> by what the defendant did to me. … Try to amend it/add on it today but
> the officer refused today so I brought the issue here. I made a
> report/complaint to my supervisor at Underhill but they fail to take any
> action Ann Sanders.

Doc. 18-1 at 5–6 (typographical errors in original).

The fourth document is an affidavit of Heather Clark with South East explaining the relationship between Underhill and South East, that Ms. Charles worked for South East as a home health aide from May 2013 until her

23

termination in November 2014 (she does not specify the exact day), that Ms. Charles never reported retaliation, and that South East had possessed no control over her or knowledge of any retaliation. Doc. 18-1 at 7–19.

The fifth document is the apparent May 19, 2014, warning Underhill issued Ms. Charles for assertedly violating company policy, explaining, "Aide states a mother, Mrs. Hayes, stole her sweater and then offered to reimburse her $100 for it. Mrs. Hayes states that aide asked her for a $600 loan." Doc. 18-1 at 20.

The sixth document is a letter from the JHRC dated March 26, 2018, asking Underhill's lawyer to provide information to investigate Ms. Charles's charges; specifically, the dates she was assigned "to the home of the Hayes family"; a pay-period listing for her for 2014; dates "Mandy" and "Savannah" are available for interviews; a listing of employees written up in 2014 by name or employee number, job title, race, date, reason, and location; and copies of those write-ups. Doc. 18-1 at 21.

The seventh, eighth, ninth, tenth, and eleventh documents are agency notice and transmittal documents, including a letter to Underhill's president from the JHRC dated November 21, 2014, notifying Underhill of Ms. Charles's November 5, 2014, charge and explaining, "The Charging Party, Ms. Jane G. Charles, alleges she was subjected [to] a hostile work environment and disciplined (write ups) because of her national origin, St. Lucian and in retaliation for reporting the harassment," and requesting information from

Underhill, including a position statement and Ms. Charles's personnel file.[5]
Doc. 18-1 at 27–28.

The twelfth document is a letter to Underhill's administrator from the
JHRC dated October 1, 2019, explaining:

> The … JHRC … has completed its investigation of the above-referenced
> Charge of Discrimination ("Charge") and rendered a finding of No
> Reasonable Cause.
>
> The Charge was filed under Title XI, Chapter 402 of the Jacksonville
> Municipal Code. Additionally, it was filed under Title VII of the Civil
> Rights Act of 1964, as amended, which is enforced by the … EEOC ….
> Accordingly, the EEOC shall be notified of our final action. Barring any
> successful appeal, they will adopt the action and notify you at the
> appropriate time.

Doc. 18-1 at 29.

## IV.   Law and Analysis

### A.   *This court has subject-matter jurisdiction.*

A party can assert the defense of lack of subject-matter jurisdiction, Fed.
R. Civ. P. 12(b)(1), and a court has an independent obligation to ensure
jurisdiction, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). If the court lacks
jurisdiction, the court must dismiss the action, Fed. R. Civ. P. 12(h)(3), without

---

[5]The other agency documents filed by Ms. Charles are: a "charge transmittal" to the
EEOC referencing Ms. Charles's July 22, 2015, charge against Underhill with an "X" next to
"Pursuant to the worksharing agreement, this charge is to be initially investigated by the
FEPA," Doc. 18-1 at 22; a memorandum from the EEOC referencing Ms. Hill's November 5,
2014, charge and stating, "Pursuant to the work-sharing agreement, this charge is to be
initially processed by the 706 Agency," Doc. 18-1 at 23; a memorandum from the JHRC to the
FCHR referencing Ms. Charles's November 5, 2014, charge and stating, "Pursuant to the
work-sharing agreement, this charge is to be initially processed by the 706 Agency," Doc. 18-
1 at 24; and a notice from the EEOC to Underhill of Ms. Charles's November 5, 2014, charge,
Doc. 18-1 at 25–26.

prejudice, *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

A district court has original jurisdiction over "all civil actions arising under the laws of the United States." 28 U.S.C. § 1331. A district court has supplemental jurisdiction over a state claim if the claim is so related to a claim within the original jurisdiction of the court that the claims form part of the same case or controversy. *Id.* § 1367(a).

Here, this Court has original jurisdiction over Ms. Charles's claims because she expressly brings them under federal law; specifically, under Title VII and the ADA. *See* Doc. 7 ¶¶ 40, 54, 63, 68, 72, 80, 85, 87, 94. In response to the motion to dismiss, she confirms she is bringing claims only under Title VII and the ADA and explains she has withdrawn "the claim under Fla. Stat. § 440.205 from this federal court and that claim remain[s] in Duval County Circuit Court." Doc. 18 at 4.

Underhill argues this Court is without jurisdiction over Ms. Charles's claims, contending, "While not citing the law directly, Plaintiff's allegations are that Underhill violated Fla. Stat. § 440.205 by retaliating against her because she alleges she attempted to file a claim under Florida's Worker's Compensation Law. Federal Court's [sic] do not have subject matter jurisdiction over § 440.205 claims." Doc. 13 at 9–10. Underhill continues, "As Plaintiff has a pending §440.205 lawsuit against Underhill in the Fourth Judicial Circuit Court in and for Duval County …, dismissal of this action is warranted." Doc. 13 at 9–10.

Underhill's argument that this Court is without jurisdiction fails for at least two independent reasons.

26

First, the argument is based on a misconstruction of the amended complaint, in which Ms. Charles brings claims under Title VII and the ADA, not under state worker's compensation law. *See generally* Doc. 7; *see also* Doc. 18 at 4. Although she repeats allegations about the denial of worker's compensation, *see* Doc. 7 ¶¶ 18, 19, 22, 27, 39, 53, 59, 60, 62, 64, 66, 67, 71, 75, 76, 78, 79, 81, 85, 88, 98, 99, she makes clear her claims are under Title VII and the ADA—not under state worker's compensation law—through the introduction and the titles of the counts, *see* Doc. 7 at pp. 1, 5, 7–11.

Second, the argument is based on federal cases applying an inapplicable federal removal statute—28 U.S.C. § 1445(c)—providing that a civil action in any state court arising under state worker's compensation law "may not be removed" to any federal district court.[6] *See* Doc. 13 at 10 (citing *Reyes v. Aqua Life Corp.*, No. 10-23548-Civ, 2012 WL 12892212 (S.D. Fla. June 13, 2012), and *Jackson v. Burke*, No. 8:10-cv-766-T-27EAJ, 2010 WL 2179115 (M.D. Fla. June 1, 2010)).[7] This action originated in this Court, not in state court, making the removal statute inapplicable.[8] *See* Doc. 1.

Underhill observes "Worker's Compensation Law is the exclusive remedy for a Florida employee's injury in the course of her employment," explains the

---

[6]Moreover, Underhill confusingly argues the Court lacks subject-matter jurisdiction but cites only Rule 12(b)(6)—the rule for a motion to dismiss for failure to state a claim upon which relief can be granted—and requests dismissal *with* prejudice—a remedy unavailable when jurisdiction is lacking. *See* Doc. 13 at 9–11.

[7]Underhill's citation for *Jackson* includes the date "May 28, 2010." Doc. 13 at 10. The order was signed on May 28, 2010, but entered on June 1, 2010. The Westlaw citation uses the entry date. *See* Doc. 8 and docket entry with Doc. 8 in *Jackson*, 8:10-cv-766-T-27EAJ.

[8]Because the removal statute—§ 1445(c)—is inapplicable, this Court need not decide if it is procedural or jurisdictional. *See Ratliff v. Lowe's Home Improvement, LLC*, No. 7:20-CV-68-REW, 2020 WL 3483560, at *1–2 (E.D. Ky. June 26, 2020) (discussing divergent authority on issue and holding statute is procedural, not jurisdictional).

"work-connectedness test" to determine if exclusivity applies, explains exclusivity applies where an employee's complaint alleges battery by a co-worker or third party within the course and scope of the employee's employment, and summarily argues, "This Court is without jurisdiction to decide the claims Plaintiff has attempted to assert against Underhill in this proceeding."[9] Doc. 13 at 10–11.

This argument fails because it likewise is based on a misconstruction of the amended complaint, in which Ms. Charles brings claims not for battery but for alleged discrimination, hostile environment, and retaliation. *See* Doc. 7 ¶¶ 40, 54, 63, 68, 72, 80, 85, 87, 94. The Florida Supreme Court has held, "Certainly, whenever a claim is based on the [Florida] Human Rights Act, Title VII of the Civil Rights Act of 1964, … or any other statute prohibiting sexual discrimination or harassment, that claim cannot in logic or fairness be barred by the [worker's compensation] exclusivity rule. Doing so would improperly nullify a statute by judicial fiat and, in the case of the Civil Rights Act of 1964, would defy the Constitution." *Byrd v. Richardson-Greenshields Sec., Inc.*, 552 So. 2d 1099, 1104 (Fla. 1989). That rationale applies to claims for disability discrimination or retaliation under the ADA. *Mangin v. Westco Sec. Sys., Inc.*, 922 F. Supp. 563, 567 (M.D. Fla. 1996). To the extent Underhill argues exclusivity deprives this Court of jurisdiction, the argument fails.

---

[9]In Florida, "the workers' compensation system establishes a system of exchange between employees and employers, as well as employees and insurance carriers, that is designed to promote efficiency and fairness." *Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 90 (Fla. 2005). "[U]nder this no-fault system, the employee relinquishes certain common-law rights with regard to negligence in the workplace and workplace injuries in exchange for strict liability and the rapid recovery of benefits." *Id.*

In short, contrary to Underhill's argument, this Court has subject-matter jurisdiction.

## B.  Denying Ms. Charles's request to strike the motion to dismiss is warranted.

"A request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). The local rules detail requirements for a motion. *See* M.D. Fla. Local Rule 3.01. Making a request in a response to a motion is improper. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).

Ms. Charles's request to strike the motion to dismiss is improper because she makes it in her response to Underhill's motion to dismiss and otherwise fails to comply with the requirements for a motion. *See* Doc. 18 at 5. Denying the request is warranted.

## C.  Dismissal for failure to state a claim upon which relief may be granted is warranted.

### 1.  *Application of the liberal-construction standard is warranted.*

A court must construe a pleading drafted by a pro se litigant liberally and hold the pleading to a less stringent standard than one drafted by a lawyer. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

Liberal construction does not mean excusing noncompliance with procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And liberal construction does not mean rewriting a deficient pleading or otherwise serving as de facto counsel. *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rather, liberal construction means that a federal court sometimes must "look beyond the labels used in a *pro se* party's complaint and focus on the

29

content and substance of the allegations" to determine if a cognizable remedy is available. *Torres v. Miami-Dade Cnty., Fla.*, 734 F. App'x 688, 691 (11th Cir. 2018). Construing the complaint in that manner avoids an unnecessary dismissal, avoids an inappropriately stringent application of a formal labeling requirement, and creates "a better correspondence" between the substance of the claim and its legal basis. *Castro v. United States*, 540 U.S. 375, 381–82 (2003).

Here, Ms. Charles claims a lawyer—Mr. Krampert—drafted the amended complaint. Doc. 18 at 8. But she alone signed the amended complaint, Doc. 7 at 14, and no lawyer has appeared on her behalf. Giving her the benefit of the doubt, liberal construction of the amended complaint is warranted.

2.   *What the Court can consider to decide whether the amended complaint states a claim upon which relief can be granted is limited.*

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"A copy of a written instrument that is an exhibit to a [complaint] is a part of the [complaint] for all purposes." Fed. R. Civ. P. 10(c). The Eleventh Circuit broadly interprets "written instrument" to include all documents attached to the complaint. *See, e.g., Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference. The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss.").

Under Rule 12(b)(6), a defendant can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Likewise, under the IFP statute, a court "shall" dismiss an action by a plaintiff proceeding IFP if at any time the court determines the action fails to state a claim upon which relief can be granted, 28 U.S.C. § 1915(e)(2)(B), applying the Rule 12(b)(6) standards, *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

To decide whether dismissal under Rule 12(b)(6) is warranted, a court considers the factual allegations in the complaint, accepts them as true, and construes them in the light most favorable to the non-moving party. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The court also draws all reasonable inferences in the non-movant's favor. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003).

Besides the complaint allegations, a court may consider a judicially noticed fact and, if there is no challenge to authenticity, a document central to a claim by the plaintiff. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). If other matters outside the complaint are presented and not excluded by the court, the court must treat the motion as one for summary judgment and provide the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see* Fed. R. Civ. P. 56 (summary-judgment rule).

A court may judicially notice a fact "at any stage of a case and on its own" if the fact "cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)–(d). Though a court need not warn a party before taking judicial notice of a fact, a party is entitled

to be heard about the propriety of taking judicial notice because judicial notice "bypasses the safeguards" of proving facts with competent evidence in court. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020), *cert. denied sub nom., Paez v. Inch*, 141 S. Ct. 309 (2020). Objecting to a report and recommendation provides an opportunity to be heard. *Paez*, 947 F.3d at 652.

Judicial notice of records of state agencies and state courts generally is appropriate. *See id.* at 651–52 (observing that judicial notice about a state case from the state court's database generally is appropriate); *Dimanche v. Brown,* 783 F.3d 1204, 1213 & n.1 (11th Cir. 2015) (judicially noticing facts in a state agency's statistical report); *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (permitting judicial notice of state court documents to decide a Rule 12(b)(6) motion); *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (considering a state agency report submitted with a response opposing a motion to dismiss); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n. 4 (5th Cir. June 1981) (en banc) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

Here, to decide whether the amended complaint states a claim upon which relief can be granted, the Court must consider the factual allegations in the amended complaint, must accept them as true, must construe them in the light most favorable to Ms. Charles, and must draw all reasonable inferences from them in her favor. *See Lanfear*, 679 F.3d at 1275.

Without converting the motion to dismiss to a motion for summary judgment and providing notice, the Court also can consider agency documents, medical records, and the October 2012 "Employee Counseling Report," as documents attached to the amended complaint, or as documents central to the claims and without a challenge to their authenticity, or as agency documents

appropriate for judicial notice. *See* Doc. 8-1 at 1–4 (right-to-sue letters from the EEOC attached to the amended complaint); Doc. 8-1 at 5, 8–57 (medical records attached to the amended complaint); 6–7 (disability decision by the Social Security Administration attached to the amended complaint); Doc. 8-1 at 58–59 (October 2012 "Employee Counseling Report" attached to the amended complaint); Doc. 8-1 at 60 (printout detailing state unemployment benefits attached to the amended complaint); Doc. 13-1 (November 5, 2014, charge attached to the motion to dismiss); Doc. 13-2 (July 22, 2015, charge attached to the motion to dismiss); Doc. 18-1 at 21–29 (agency transmittal and notice documents attached to the response to the motion to dismiss). The Court also can consider the state court and worker's compensation documents as appropriate for judicial notice. *See* Doc. 13-4 (state court complaint attached to the motion to dismiss); Doc. 13-5 (compilation of state agency and court orders pertaining to worker's compensation attached to the motion to dismiss).

Considering the other documents provided by Underhill with its motion to dismiss and by Ms. Charles with her response to the motion to dismiss is unwarranted because none are part of the complaint, central to the claims, or appropriate for judicial notice. *See* Doc. 13-3 (July 8, 2014, JSO "Employee Complaint Form"); Doc. 18-1 at 4 (non-compete agreement between Ms. Charles and Underhill); Doc. 18-1 at 5–6 (September 19, 2016, JSO "Employee Complaint Form"); Doc. 18-1 at 7–19 (affidavit of Ms. Clark with South East); Doc. 18-1 at 20 (May 19, 2014, warning to Ms. Charles).

Converting the motion to dismiss into a motion for summary judgment is unwarranted because, as explained below, dismissal is warranted.

3.   *Dismissal is warranted because the amended complaint fails to include sufficient factual allegations to make plausible unlawful discrimination or retaliation.*

The United States Supreme Court explained the pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2008), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[10] The standard does not require detailed factual allegations but requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Labels, conclusions, formulaic recitations of the elements, and "naked" assertions are insufficient. *Id.* To survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* (quoted authority omitted). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plausibility differs from probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the pleaded facts are "merely consistent with" liability, the complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted). Stated another way, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—

---

[10]In its motion to dismiss, Underhill relies on some cases predating *Iqbal* and *Twombly* and applying what had become known as the "no set of facts" or "notice" standard from *Conley v. Gibson*, 355 U.S. 41 (1957). *See* Doc. 13 at 14–16 (citing, for example, *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006), *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006), *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.17 (11th Cir. 2001), *Roe v. Aware Women Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), and *Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc.*, 770 F. Supp. 1530, 1533 (M.D. Fla. 1991)). *Twombly* "retired" that standard. *Iqbal*, 556 U.S. at 670. This report and recommendation relies on the standard as articulated in *Iqbal* and *Twombly*.

that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted).

When applying the pleading standard, a court should undertake a "two-pronged approach." *Id.* First, the court should identify and disregard legal conclusions not entitled to the assumption of truth. *Id.* Second, the court should identify and assume the truth of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Here, undertaking the first prong of the two-pronged approach, the amended complaint contains many legal conclusions that must be disregarded and are not entitled to the assumption of truth. Besides nearly all paragraphs under counts I through VIII, the amended complaint includes these legal conclusions:

> "On or about 2014, Underhill and South East were on notice that health care workers were subject to harassment at the Residence." Doc. 7 ¶ 13.

> "Ms. Charles suffered severe psychological damages and physical damages as a result of the sexual assault and battery." Doc. 7 ¶ 17.

> "Underhill and South East discharged Ms. Charles for requesting workers compensation." Doc. 7 ¶ 22.

> "Due to the failure of Underhill and South East to treat Ms. Charles, Ms. Charles['s] conditions worsened and this resulted in a slip and fall that injured Ms. Charles'[s] neck, back, fracture ankle, and split disc in her tail bone, major depression, major anxiety, and PTSD." Doc. 7 ¶ 24.

> "Ms. Charles is totally disabled as a result of the sexual assault and battery and resulting foreseeable events." Doc. 7 ¶ 25.

"All conditions precedent have been waived or otherwise fulfilled." Doc. 7 ¶ 30.

"At all times, the employees of Underhill mentioned herein were acting within the scope of their employment, and Underhill is responsible for the actions and conduct of those employees." Doc. 7 ¶ 31.

"As a result of Underhill's unlawful acts, Ms. Charles has suffered loss of income, loss of fringe benefits and job security and other losses." Doc. 7 ¶ 32.

"As a result of Underhill's unlawful acts, Ms. Charles has suffered humiliation, embarrassment, mental and emotional distress and anguish, loss of self-esteem and harm to personal and business reputation." Doc. 7 ¶ 33.

"The aforesaid acts of Underhill and its employees were done maliciously, willfully and with reckless disregard of Ms. Charles'[s] rights." Doc. 7 ¶ 34.

See Iqbal, 556 U.S. at 680–81 (holding an allegation that the defendant "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race and/or national origin for no legitimate penological interest'" was a "bare assertion" amounting to nothing more than formulaic recitation of elements of discrimination claim).

Undertaking the second prong of the two-pronged approach, the Court is left with these alleged and judicially noticed facts.

Ms. Charles is a Black woman of St. Lucian decent living in Duval County. Doc. 7 ¶¶ 1, 5.

In 2010, Underhill hired her to work as a certified home health aide, and, in May 2013, she began working for Underhill and its leasing agent, South East, to provide health care services for their patients. Doc. 7 ¶¶ 5, 6, 9–11.

In April 2014, Underhill and South East assigned her to a residence at 8940 Yeoman Court in Jacksonville to provide care to a client—Mr.

36

Hayes's sister—without saying anything about harassment or undertaking extra security measures. Doc. 7 ¶ 12–14. The client's mother told Underhill not to send "these people" (people who do not speak English) to her house. Doc. 13-1 at 2. Ms. Charles reported this to Underhill and requested a new assignment but was sent back to the same location. Doc. 13-1 at 2.

On April 18, 2014, while working there, Mr. Hayes placed his hand on her thigh. Doc. 7 ¶ 16; Doc. 13-1 at 2. She immediately contacted Underhill to request care and, to enable her to see a doctor, worker's compensation. Doc. 7 ¶ 18.

Underhill denied her request, and she failed to obtain worker's compensation through state agency and judicial processes. Doc. 7 ¶ 19; Doc. 13-5.

On May 23, 2014, she and Mr. Allmond sued Ms. Hayes in state court, accusing Ms. Hayes of slander and race discrimination for telling Underhill that she had demanded $600 to pay rent. Doc. 13-4.

On October 28, 2014, after sending Ms. Charles to an abandoned home, Underhill gave her a written warning for "Not completing assigned hours" and "Insubordination," explaining, "Aide was assigned to new client that was moving. She refused to work in an empty home." Doc. 7 ¶ 21; Doc. 8-1 at 58–59.

At an unstated time, Underhill terminated her and hired a white man for her position. Doc. 7 ¶¶ 37, 38, 43, 59.

Underhill "routinely" made fun of how she pronounces words and, even though she speaks clearly, stated "they" could not understand her because of her accent. Doc. 7 ¶¶ 45, 46.

On November 5, 2014, she filed a charge with the JHRC for national-origin discrimination and retaliation, claiming she had been subject to a hostile environment since May 19, 2014, consisting of "sexual acts and racial comments" and had been "written-up" on April 14, 2014, and October 28, 2014. Doc. 13-1 at 1–2.

On July 22, 2015, she filed a second charge with the JHRC for retaliation, claiming because she had filed the first charge, she was denied the opportunity for patient assignments and was told to check with her lawyer before obtaining any assignments. Doc. 13-2.

37

In late 2016, she slipped and fell, injuring her neck and back, fracturing her ankle, splitting a disc in her tailbone, and causing her to fall into major depression, major anxiety, and PTSD. Doc. 7 ¶¶ 24, 82, 87, 94; Doc. 8-1 at 5, 24–57. She also has panic attacks. Doc. 7 ¶¶ 82, 87, 94.

In 2017, she sought care at the Jacksonville Women Center and Mental Health Care Center for citizens of Sulzbacher. Doc. 7 ¶ 23; Doc. 8-1 at 5, 8–57. She was prescribed medication for "mental health and pain." Doc. 7 ¶ 26; Doc. 8-1 at 8–57. The Social Security Administration found her disabled and entitled to benefits beginning in April 2017. Doc. 8-1 at 6–7.

On October 1, 2019, the JHRC informed her it had completed its investigation and found no reasonable cause. Doc. 18-1 at 29. On January 16 and 17, 2020, the EEOC issued right to sue letters, adopting the JHRC's findings. Doc. 7 ¶ 8; Doc. 8-1 at 1–4.

Liberally construing the amended complaint and drawing on judicial experience and common sense, dismissal is warranted under Rule 12(b)(6) and the IFP statute. At a minimum, Ms. Charles fails to allege sufficient facts to state a plausible claim for discrimination or retaliation on which relief can be granted; i.e., she fails to plead "factual content that allows the court to draw the reasonable inference that [Underhill] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (quoted).

Title VII provides, "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Included within its scope is a prohibition against a discriminatorily hostile environment based on a protected category. *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004). A hostile environment is an environment

"permeated with discriminatory intimidation, ridicule, and insult." *Rojas v. Fla.*, 285 F.3d 1339, 1344 (11th Cir. 2002) (quoted authority omitted).

Title VII further provides, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Title I of the ADA provides that no employer "shall discriminate against a qualified individual on the basis of disability in regard to … the advancement, [] discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[11] Discrimination includes failing to provide "reasonable accommodations to the known physical or mental limitations of" the individual, "unless [the employer] can demonstrate that the accommodation would impose

---

[11]A "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Reasonable accommodations "may include" making existing facilities readily accessible, job restructuring, modifying work schedules, reassigning a person to a vacant position, and acquiring or modifying equipment, modifying examinations, providing training materials, providing readers or interpreters, "and other similar accommodations." *Id.* § 12111(9).

"Disability" means "a physical or mental impairment that substantially limits one or more major life activities of [an] individual"; "a record of such an impairment; or" "being regarded as having such an impairment." *Id.* § 12102(1)(A)–(C). "Being regarded as having such an impairment" means a person "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). "Disability" does not include "transitory and minor" impairments—impairments lasting or expecting to last six months or less. *Id.* § 12101(3)(B). Therefore, "an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).

an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). "An employer's failure to reasonably accommodate a disabled individual is itself discrimination." *Palmer v. McDonald*, 624 F. App'x 699, 706 (11th Cir. 2015).

The ADA further provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.* § 12203(a). In the ADA context, a request for an accommodation can constitute statutorily protected expression. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998).

To survive dismissal for failure to state a claim upon which relief can be granted, a Title VII or ADA complaint need not include facts establishing a prima facie case but must include sufficient facts to plausibly suggest discrimination or retaliation. *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017) (Title VII); *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171–72 (11th Cir. 2016) (Title VII); *Lowe v. Delta Air Lines Inc.*, 730 F. App'x 724, 730 n.2 (11th Cir. 2018) (ADA); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 n.2, 1246 (11th Cir. 2015) (ADA); *Stewart v. Jones Utility and Contracting Co. Inc.,* 806 F. App'x 738, 742 (11th Cir. 2020) (ADA). A conclusory allegation that a defendant acted discriminatorily or retaliatory is insufficient. *Mondy v. Boulee*, 805 F. App'x 939, 942 (11th Cir. 2020) (Title VII); *Andrews v. City of Hartford*, 700 F. App'x 924, 927 (11th Cir. 2017) (ADA).

Moreover, for a hostile environment claim, a Title VII complaint must include sufficient facts to plausibly suggest that the workplace was "'permeated with discriminatory intimidation, ridicule, and insult,'" *Wilkerson*

*v. H & S, Inc.*, 438 F. App'x 769, 770 (11th Cir. 2011) (quoting *Rojas*, 285 F.3d at 1344), and that "a basis exists for holding the employer liable," *Little v. CRSA*, 744 F. App'x 679, 682 (11th Cir. 2018) (citing *Trask v. Sec'y Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016)). For the latter, the complaint must include sufficient facts to plausibly suggest either vicarious liability (a supervisor with immediate or successively higher authority over the employee created the hostile environment) or direct liability (the employer knew or should have known about the harassing conduct but failed to take prompt remedial action). *Little*, 744 F. App'x at 682 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Addressing Ms. Charles's claims, beginning with count I, the amended complaint fails to include sufficient facts to plausibly suggest that Underhill discriminated against her because of her gender in violation of Title VII. Considering only the factual allegations and not the legal conclusions, she alleges she is a woman, she was qualified to work as certified home health aide, Underhill terminated her, and Underhill replaced her with a man. Doc. 7 ¶¶ 35–38. Those allegations are insufficient. *See Uppal v. Hosp. Corp.*, 482 F. App'x 394, 396 (11th Cir. 2012) (affirming dismissal of a Title VII discrimination claim; an Indian woman alleged "'similarly situated employees outside [her] protected classes' engaged in similar misconduct, but were not disciplined" without including more detail).

Addressing count II, the amended complaint fails to include sufficient facts to plausibly suggest that Ms. Charles experienced a hostile environment based on her gender, race, or nationality in violation of Title VII. Considering only the factual allegations and not the legal conclusions, she alleges she is a black woman of St. Lucian decent, Underhill "routinely" made fun of how she

41

pronounced words, and "they" said they could not understand her because of her accent even though she spoke clearly. Doc. 7 ¶¶ 45–47. In her November 5, 2014, charge, she adds she reported to her supervisor, "Ms. Sanders," that when assigned to the Hayes residence, the client's mother would state she told Underhill not to send "these people" (people unable to speak English and whom she could not understand), and Charles asked for an assignment to a new client but was repeatedly sent back to the residence. Doc. 13-1 at 2. Those allegations are insufficient. *See Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 796–97 (11th Cir. 2020) (affirming dismissal of a Title VII hostile environment claim; the employee alleged she was harassed, called "the girl," and disciplined more severely than men without including more detail); *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (affirming dismissal of a Title VII hostile environment claim; the employee alleged the defendants maintained a hostile environment by punishing African Americans more severely than white counterparts without including more detail); *Little*, 744 F. App'x at 682 (affirming dismissal of a Title VII hostile environment claim; the employee alleged another employee made several offensive comments in a three-month period without showing "management must have known" to make plausible direct or vicarious liability).

Addressing counts III, V, and VII, the amended complaint fails to include sufficient facts to plausibly suggest that Underhill retaliated against Ms. Charles for engaging in protected activity in violation of Title VII or the ADA. Considering only the factual allegations and not the legal conclusions, she alleges Underhill and South East discharged her, Doc. 7 ¶ 22, but she does not indicate when, *see generally* Doc. 7. In her July 22, 2015, charge, she states she was assigned no clients after the November 5, 2014, charge, and when she asked "Mandy and Savannah" about it five months later, they told her she

would have to speak with her lawyer. Doc. 13-2 at 1. The mere facts she engaged in protected activity by filing charges on November 5, 2014, and July 22, 2015, Docs. 13-1, 13-2, and on an unspecified date was discharged or sometime after the first charge client assignments ceased are insufficient. *See Henderson v. City of Birmingham*, 826 F. App'x 736, 742 (11th Cir. 2020) (affirming dismissal of a Title VII retaliation claim; the employee alleged he had received a counseling report seven months after filing a charge and failed to allege facts supporting that the employer kept him under the same supervisor as retaliation after the plaintiff complained about the supervisor).

Moreover, Ms. Charles does not rely on filing a charge or charges as the basis for the alleged retaliation, instead repeatedly relying on her request for worker's compensation, *see* Doc. 7 ¶¶ 56, 59, 60, 62, 64, 75–79, 81, and other asserted actions in conclusory statements, *see* Doc. 7 ¶ 57 ("Underhill retaliated against Ms. Charles because Ms. Charles reported the discriminatory conduct of her supervisors to Perils Johnson."); Doc. 7 ¶ 58 ("Underhill retaliated against Plaintiff because she opposed conduct which was made an unlawful practice ... including by insisting that she be treated fairly without regard to her gender and national origin and with respect to her termination and job duties.");[12] Doc. 7 ¶ 90 ("Ms. Charles opposed Defendant's unlawful employment practices predicated on disability discrimination and thereby engaged in protected activity under the ADA."); Doc. 7 ¶ 91 ("Underhill's hostile and disparate treatment of Ms. Charles w[as] causally

---

[12]Ms. Charles's conclusory statement, "Underhill retaliated against Plaintiff because she opposed conduct which was made an unlawful practice ... including by insisting that she be treated fairly without regard to her gender and national origin and with respect to her termination and job duties," Doc. 7 ¶ 58, does not appear to reference her first agency charge in which she alleged only a hostile environment based on national origin and retaliation with no mention of termination or job duties. *See* Doc. 13-1 at 1–2.

related to her protected opposition to disability discrimination."); Doc. 7 ¶ 92 ("Underhill's purported reasons for subjecting Ms. Charles to hostile and/or disparate treatment were a mere pretext for retaliation motivated by Ms. Charles' opposition against Underhill's disability discrimination."); Doc. 18 at 7 ("[Ms. Charles] believe[s] that she has been a target of retaliation prior to the civil lawsuit as her co-workers made fun about her accent and as to all others.").

Addressing count IV, the amended complaint fails to include sufficient facts to plausibly suggest that Underhill discriminated against Ms. Charles because of her race or national origin in violation of Title VII. Considering only the factual allegations and not the legal conclusions, she alleges she is a black woman of St. Lucian descent and Underhill "discharged" her. Doc. 7 ¶¶ 22, 65. Again, she alleges Underhill "routinely" made fun of how she pronounced words, and "they" said they could not understand her because of her accent even though she spoke clearly. Doc. 7 ¶¶ 45, 46. And again, in her November 5, 2014, charge, she adds she reported to her supervisor, "Ms. Sanders," that when assigned to the Hayes residence, Ms. Hayes would state she told Underhill not to send "these people" (people unable to speak English and whom she could not understand), and Charles asked for an assignment to a new client but was repeatedly sent back to the residence. Doc. 13-1 at 2. Those allegations are insufficient. *See Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 296 (11th Cir. 2012) (affirming dismissal of a Title VII claim where a Muslim employee alleged another employee said she was "dirty" and she should "burn in hell" and played Christian gospel music; "offensive conduct, albeit rude and insensitive, is not actionable under Title VII … Title VII is not a 'general civility code'").

Addressing count VI, the amended complaint fails to include sufficient facts to plausibly suggest that Underhill failed to provide Ms. Charles with a reasonable accommodation in violation of the ADA. Considering only the factual allegations and not the legal conclusions, she alleges she has PTSD, panic attacks, depression, anxiety, pinched nerves in her back and neck, and a split tailbone; she asked for worker's compensation; and Underhill responded by terminating her. Doc. 7 ¶¶ 82, 85. Even setting aside that her physical impairments appear to have developed long after she requested worker's compensation, and the medical documents she includes as exhibits to her amended complaint concern a 2016 slip-and-fall and a 2017 car accident, those allegations are insufficient. *See Desmond v. Yale-New Haven Hosp., Inc.*, 738 F. Supp. 2d 331, 350–51 (D. Conn. 2010) (dismissing an ADA "failure to accommodate" claim; the employee alleged she had requested medical treatment, but medical treatment is not a reasonable accommodation because it fails to "propose or reference any change in the work environment or involve the removal of workplace barriers").

Finally, addressing count VIII, the amended complaint fails to include sufficient facts to plausibly suggest that Underhill discriminated against Ms. Charles because of a disability or perceived disability, in violation of the ADA. Considering only the factual allegations and not the legal conclusions, she alleges she has PTSD, panic attacks, depression, anxiety, pinched nerves in her back and neck, and a split tailbone; Underhill knew of an on-the-job injury on April 18, 2014; and Underhill failed to provide her worker's compensation and terminated her. Doc. 7 ¶¶ 82, 96, 99. Those allegations are insufficient. *See Garrett v. Postmaster Gen. U.S. Postal Servs.,* 725 F. App'x 782, 784–85 (11th Cir. 2018) (affirming dismissal of a Rehabilitation Act claim, which is akin to an ADA claim; the employee alleged the employer created unsafe

45

working conditions and failed to provide proper treatment after an accident without alleging facts showing discrimination based on a disability).

Ms. Charles's argument that the order permitting her to proceed IFP mandates denial of the motion to dismiss fails. *See* Doc. 18 at 2. The only issue a court decides in considering a motion to proceed IFP is whether the statements in the financial affidavit satisfy the requirement of poverty. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). Absent a serious misrepresentation, a court must accept an affidavit that addresses the statutory language. *Id.* Here, while the order recognized improvement in the amended complaint, the order—entered before Underhill's appearance, before Underhill's motion to dismiss, and before the filing of additional documents that can be considered at the dismissal stage—made no finding that the amended complaint states a claim as a matter of law.

At bottom, Ms. Charles seeks redress for events in 2014 she contends caused contemporaneous or eventual mental and physical injury: employee counseling based on Ms. Hayes's allegedly slanderous accusation that she asked Ms. Hayes for a $600 loan; employee counseling for refusing to work in an empty house; cessation of assignments or termination; the alleged assault and battery; and, most especially, the denial of worker's compensation for injuries therefrom. Offering little more than that she is in protected classes, that she developed disabilities at some point, and that she received workplace comments relating to her accent, she fails to make plausible that those events in 2014 occurred because of unlawful discrimination and retaliation. Dismissal is warranted.

    *4.*      *Considering whether Ms. Charles exhausted her administrative remedies is unnecessary and, in the interest of judicial economy, unwarranted.*

An employee has administrative remedies for a Title VII violation, and the employee must exhaust them before filing a Title VII claim in court.[13] 42 U.S.C. § 2000e-5(e)(1), (f)(1); *Fort Bend Cty., Tx. v. Davis*, 139 S. Ct. 1843, 1851 (2019). The purpose of the exhaustion requirement is to give the agency the first opportunity to investigate the alleged discriminatory practice and try to resolve the situation in the manner deemed warranted. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).

Failing to exhaust administrative remedies is a failure to satisfy a condition precedent to filing a Title VII claim. *Gorman v. Verizon Wireless Tex., LLC*, 753 F.3d 165, 170 (5th Cir. 2014). A general statement that the plaintiff received a notice of a right to sue from the agency within 90 days of filing the action and "otherwise fulfilled all conditions precedent" sufficiently pleads compliance with a condition precedent under Rule 9(c). *Myers v. Central Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010).

---

[13]Title VII directs that a charge ... shall be filed with the EEOC by or on behalf of a person claiming to be aggrieved within 180 days after the alleged unlawful employment practice occurs. For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered to grant or seek relief, Title VII instructs the complainant to file her charge first with the state or local agency. The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, whichever is earlier, to file a charge with the EEOC. If the state or local agency has a worksharing agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other.

*Fort Bend Cty.*, 2019 WL 2331306, at *2 (internal quotation marks, alterations, and citations omitted). Here, Ms. Charles appears to have filed her charges with the local agency, the JHRC. *See* Docs. 13-1, 13-2.

If an employee fails to timely exhaust administrative remedies, the employee's later judicial claim under Title VII is procedurally barred. *Del. St. Coll. v. Ricks*, 449 U.S. 250, 256 (1980). Failure to exhaust administrative remedies is a non-jurisdictional affirmative defense, *Fort Bend Cnty.*, 139 S. Ct. at 1851–52, with the burden on the defendant, *Hardaway v. Hartford Pub. Works Dept.*, 879 F.3d 486, 490 (2d Cir. 2018). A motion to dismiss for failure to exhaust administrative remedies is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

An agency charge must include a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). An employee must exhaust administrative remedies for each discrete act for which the employee seeks to bring a claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002). Complaint allegations may encompass any discrimination like or related to the charge allegation and any discrimination growing out of the charge during the agency process. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Complaint allegations also may "amplify, clarify, or more clearly focus" the charge allegations. *Gregory*, 355 F.3d at 1279.

Because courts are "extremely reluctant to allow procedural technicalities" to bar Title VII claims, the scope of a charge "should not be strictly interpreted." *Id.* at 1280. A factual dispute about what the agency actually investigated could preclude dismissal for failure to exhaust administrative remedies. *See Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 (S.D. Fla. 1993) (finding, in the motion to dismiss context, that the

plaintiff could present evidence that the agency actually investigated a claim that was not included in the charge to rebut an exhaustion argument).

Employees suing under Title I of the ADA also must exhaust their administrative remedies before suing in federal court, following the same Title VII requirements and law. 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); *see Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (applying Title VII exhaustion law to an ADA claim).

A Title VII or an ADA claim must be brought within 90 days after the plaintiff receives notice of agency dismissal of the charge. 42 U.S.C. §§ 2000e–5(f)(1), 12117(a). If a court dismisses a Title VII or ADA claim after the 90 days, the dismissal is with prejudice. *Boazman v. Econ. Lab, Inc.*, 537 F.2d 210, 212–13 (5th Cir. 1976) (Title VII); *Powell v. Siegal*, 447 F. App'x 92, 93 (11th Cir. 2011) (Title VII).

Here, because the amended complaint fails to include sufficient factual allegations to make plausible unlawful discrimination or retaliation, this Court need not consider Underhill's exhaustion argument. Both the interest of judicial economy and Ms. Charles's allegation that JRHC employees failed to include all of her claims and refused to allow her to amend her charges suggest the Court should not consider the argument.

**D.    *Deciding Underhill's alternative request for a more definite statement is unnecessary.***

A "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The motion

must be made before filing a responsive pleading and must point out the defects complained of and the details desired." *Id.*

Here, because dismissal is warranted, this Court need not consider Underhill's alternative request for a more definite statement, Doc. 13 at 22–23. (If the Court determines dismissal is unwarranted, requiring Ms. Charles to again replead to allege additional facts to support each claim, as described, is warranted.)

## E.  *Giving Ms. Charles another opportunity to amend is unwarranted.*

A court should "freely give leave" to a plaintiff to amend the complaint "when justice so requires." Fed. R. Civ. P. 15(a). Generally, if a more carefully drafted complaint might state a claim, a court abuses its discretion if it does not provide a pro se plaintiff at least one opportunity to amend before dismissal with prejudice, unless doing so would be futile because a more carefully drafted complaint still could not state a claim or the plaintiff indicates an absence of desire to amend. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

Here, although proceeding without a lawyer, Ms. Charles is not a novice to litigation, as evidenced by her state lawsuits (one against Underhill; one against Ms. Hayes). *See* Doc. 13-4; Doc. 18 at 4. This Court has given her an opportunity to amend, and, in doing so, carefully explained the pleading standard, detailed pleading deficiencies in the original complaint, specified that the amended complaint must include sufficient factual allegations to state a plausible claim, and provided her information about free legal services. Doc. 4. Using this opportunity and even claiming to have received help from a lawyer, she still fails to allege facts sufficient to state a plausible claim of

50

unlawful discrimination or retaliation and continues to emphasize as her chief complaint the denial of worker's compensation benefits for injury allegedly caused by Mr. Hayes. The additional information she provides in response to the motion to dismiss fails to suggest she could do otherwise. Rather, the additional information suggests she would add to a third pleading tangential claims and defendants, including a malpractice claim against the lawyer and civil rights claims against the allegedly conspiratorial governmental agencies and employees. Doc. 18 at 8, 13.

## V.   Recommendation[14]

The undersigned recommends:

(1)   **granting** Underhill's motion to dismiss for failure to state a claim on which relief may be granted, Doc. 13;

(2)   **denying** Ms. Charles's motion to strike the motion to dismiss, Doc. 18 at 5;

(3)   **dismissing** the action with prejudice; and

---

[14]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

(4)   **directing** the Clerk of Court to (a) terminate any motion then pending and (b) close the file.

**Entered** in Jacksonville, Florida, on January 28, 2021.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   The Honorable Marcia Morales Howard
     R. Michelle Tatum, Esquire

     Jane G. Charles
     7147 Old Kings Road S.
     Apt. K-81
     Jacksonville, FL 32217